```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

DULAM RAMRAJ,

                           Petitioner,

    -vs-

WILLIAM P. BARR, Attorney General; ;
THOMAS FEELEY, Field Office Director
for Detention and Removal Buffalo
Field Office Bureau of Immigration
and Customs Enforcement Department of
Homeland Security; and JEFFREY
SEARLS, Facility Director, Buffalo
Federal Detention Facility,

                           Respondents.

**No. 6:19-cv-06723-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding <u>pro se</u>, Dulam Ramraj ("Ramraj" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against the named Respondents (hereinafter, "the Government") challenging his continued detention in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). For the reasons discussed below, the request for a writ of habeas corpus is denied and the petition is dismissed without prejudice for failure to exhaust administrative remedies.

## II. Factual Background and Procedural History

Ramraj, a native and citizen of Guyana, entered the United States at New York, New York port of entry on April 16,

2016, as a nonimmigration (class B-2) visa holder. His visa authorized him to remain in this country until October 15, 2016.

On March 1, 2019, Ramraj was arrested by ICE officers as he was leaving Schenectady City Court[1] and taken to an ICE facility in Albany, New York, for processing. As required, the Consulate of Guyana was notified of his arrest. Ramraj was served with, <u>inter alia</u>, a Notice of Custody Determination reflecting DHS's decision to detain him pending a final administrative decision in his immigration removal proceedings due to his pending criminal charges, lack of equities in the United States, and his serious risk of flight. Ramraj acknowledged receipt of the notice and requested that an immigration judge ("IJ") review DHS's custody determination.

Also at the time he was taken into DHS custody, Ramraj was served with A Notice to Appear charging him, pursuant to INA § 237(a)(1)(B), with being an alien subject to removal due to having illegally overstayed his visa.

On March 25, 2019, Ramraj appeared before an IJ for a removal hearing and a bond hearing. He indicated, through his attorney, that he would seek relief from removal. Therefore, the removal

---

[1] Ramraj was attending a court appearance in connection with a criminal proceeding against him on a charge of second-degree menacing (N.Y. Penal Law § 120.14(1)). He had been arrested on February 14, 2019, after he pulled out a knife and pointed it at his wife during a domestic dispute. Ramraj has submitted a letter received by his immigration attorney indicating that the second-degree menacing charge was dismissed in the interest of justice pursuant to N.Y. Crim. Proc. Law § 170.30(1)(g). Reply (ECF #5), pp. 29-30 of 57.

hearing was adjourned until April 15, 2019. Because it was unclear where Ramraj would reside if released on bond, in light of the then-pending order of protection in favor of his wife, the bond hearing was adjourned as premature and rescheduled for April 15, 2019.

The IJ conducted a bond hearing pursuant to 8 C.F.R. § 236.1(c) on April 15, 2019, and denied release in a check-the-box form. The removal hearing was adjourned until June 20, 2019, so that Ramraj's attorney could file an Application for Asylum and Withholding of Removal.

The removal hearing scheduled for June 20, 2019, was adjourned until to August 7, 2019, for reasons not apparent from the record.

The IJ conducted the removal hearing as scheduled on August 7, 2019. Following the hearing, the IJ denied Ramraj's applications for relief from removal and ordered him removed from the United States to Guyana.

Ramraj filed an appeal of the IJ's removal order to the Board of Immigration Appeals ("BIA") on August 19, 2019. His appellate brief was due on October 9, 2019.[2]

Ramraj instituted the instant proceeding on September 30, 2019, by filing a pro se petition for a writ of habeas corpus (ECF #1). The Government filed a response, supporting exhibits, and a

---

[2] As of November 22, 2019, the date of the Government's response to the petition, the appeal before the BIA remained pending.

memorandum of law (ECF #4) on November 22, 2019. On December 16, 2019, Ramraj filed a pleading docketed as a reply but which appears to be another form petition, along with supporting exhibits (ECF #5).

### III. Scope of Review

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. Ruiz-Martinez v. Mukasey, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." De Ping Wang v. Dep't of Homeland Sec., 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. See Hernandez v. Gonzales, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The

Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, . . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. Zadvydas, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011) (per curiam).

**IV. Discussion**

    **A. Overview of Petitioner's Claims**

Ramraj asserts that he is entitled to relief under Section 2241 on the following grounds: (1) his detention violates 8 U.S.C. § 1226(a); (2) his detention without a hearing at which the Government demonstrates by clear and convincing evidence that he is a flight risk or a danger to the community violates his right to procedural due process under the Fifth Amendment; (3) his prolonged

detention violates his right to substantive due process under the Fifth Amendment; and (4) his detention violates the Eighth Amendment's Excessive Bail Clause. The Government contends that the claims relating to the adequacy of the bond hearing Ramraj received are unexhausted and without merit, and that his detention has not become unreasonably prolonged. Ramraj has not responded to the Government's exhaustion argument.

### B. Prudential Exhaustion Requirement

"A habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." Michalski v. Decker, 279 F. Supp.3d 487, 495 (S.D.N.Y. 2018) (citing Monestime v. Reilly, 704 F. Supp.2d 453, 456 (S.D.N.Y. 2010) (further citations omitted)). While Section 2241 does not include a statutory exhaustion requirement, courts have generally required exhaustion as a "'prudential matter.'" Michalski, 279 F. Supp.3d at 495 (quoting Paz Nativi v. Shanahan, No. 16-CV-8496(JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (citing Araujo–Cortes v. Shanahan, 35 F. Supp.3d 533, 538 (S.D.N.Y. 2014); Howell v. INS, 72 F.3d 288, 291 (2d Cir. 1995) ("Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'") (quoting Guitard v. U.S. Sec'y of Navy, 967 F.2d 737, 740 (2d Cir. 1992))). Likewise, the immigration regulations relating to bond do

not contain an exhaustion requirement. Rather, when an IJ denies an immigrant release on bond, that decision may be appealed to the BIA. See 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals. . . ."); 8 C.F.R. § 1003.19(f) ("An appeal from the determination by an Immigration Judge may be taken to the Board of Immigration Appeals pursuant to § 1003.38."); 8 C.F.R. § 1003.38(b) ("The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge (Form EOIR-26) shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge's oral decision or the mailing of an Immigration Judge's written decision. . . . A Notice of Appeal (Form EOIR-26) may not be filed by any party who has waived appeal.").

The Government asserts that there is no evidence that Hossain ever appealed IJ's decision denying bond to the BIA. *See* Declaration of Anthony D. Coker ("Coker Decl.") (ECF #4-1) ¶ 11 ("There is no record in DHS's files of Ramraj ever appealing the bond order. Had he filed such an appeal, DHS would have received and stored a Notice of Appeal from Ramraj, a receipt of the Notice of Appeal by the [BIA], and a briefing scheduled [sic] from the BIA. The fact that none of these are in DHS's records indicate [sic] that Ramraj never appealed the bond decision by the IJ."). Ramraj does not dispute this assertion.

The Court finds that it is inappropriate to waive the prudential exhaustion requirement in this case. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quotation and citation omitted); see also, e.g., Weinberger v. Salfi, 422 U.S. 749, 765 (1975). The first factor weights in favor of requiring exhaustion because there is a clearly established administrative scheme for dealing with custodial determinations, including an appeals process to the BIA. Resendiz v. Holder, No. C 12-04850 WHA, 2012 WL 5451162, at *4 (N.D. Cal. Nov. 7, 2012). And, consideration of the bond claim by the BIA is necessary to generate a proper record. Because there was no bond memorandum generated due to Ramraj's failure to appeal the IJ's decision to the BIA, the only document in the record regarding the bond hearing is a check-the-box form indicating that bond was denied and that Ramraj had reserved his right to appeal. There is no explanation whatsoever as to why the IJ denied bond which leaves the Court unable to conduct a meaningful review of Ramraj's claim that the wrong standard of proof was applied at the bond hearing.

The second factor also weighs in favor of requiring exhaustion as a prudential matter. "To allow petitioners to circumvent the appeals procedure and petition the district court for the same relief that could have been sought before the BIA would 'encourage the deliberate bypass of the administrative scheme.'" Resendiz, 2012 WL 5451162, at *4 (quoting Puga, 488 F.3d at 815).

Where, as here, "an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies[:] . . . (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003) (quotation omitted). "However, merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will only be excused in a narrow set of circumstances." Wilson v. MVM, Inc., 475 F.3d 166, 175 (3d Cir. 2007). In particular, "to invoke the futility exception to exhaustion, a party must 'provide a clear showing' of futility before the District Court." Id. (quoting D'Amico v. CBS Corp., 297 F.3d 287, 293 (3d Cir. 2002)).

Ramraj has not asserted any reason why he should be excused from the prudential exhaustion requirement, much less made a "clear showing" that exhaustion would be futile. In any event, even if Ramraj believes that his arguments on administrative appeal are unlikely to persuade the BIA to reverse the IJ's custody determination, that is not enough to establish futility. Torres v. Decker, No. 18-CV-10026 (VEC), 2018 WL 6649609, at *3 (S.D.N.Y. Dec. 19, 2018 (citing Beharry, 329 F.3d at 62 ("That [the petitioner's] argument would likely have failed [before the BIA] is not tantamount to stating that it would have been futile to raise it. . . .")).

Further, even assuming that an appeal to the BIA more than likely would be rejected as untimely,[3] the Court cannot find that futility has been established. For instance, were the BIA to dismiss his appeal as untimely, Ramraj could file a motion to have the BIA reconsider the timeliness finding. See In Re Edilzar Lopez, 22 I. & N. Dec. 16, 16 (BIA 1998) ("Where the Board of Immigration Appeals dismisses an appeal as untimely, without adjudication on the merits, the Board retains jurisdiction over a motion to reconsider its dismissal of the untimely appeal to the extent that the motion challenges the finding of untimeliness or

---

[3] See, e.g., In Re: Juan Carlos Ramirez Romero, No. : AXX XX1 137 - LOS, 2004 WL 2374862, at *1 (DCBABR Aug. 26, 2004) (per curiam) (unpublished opn.) (dismissing appeal of IJ's oral decision because it was filed more than 30 calendar days after the issuance of the ruling) (citing 8 C.F.R. § 1003.38(b)(c)).

requests consideration of the reasons for untimeliness[, such as ineffectiveness of counsel]."); see also In Re: Juan Carlos Ramirez Romero, 2004 WL 2374862, at *1 (noting that because it "dismissed the appeal for lack of jurisdiction, either party wishing to file a motion in this case should follow the following guidelines: If you wish to file a motion to reconsider challenging the finding that the appeal was untimely, you must file your motion with the Board. However, if you are challenging any other finding or seek to reopen your case, you must file your motion with the Immigration Court.") (citations omitted). It is therefore possible that the BIA ultimately could accept a late appeal and find that the evidence proffered at Ramraj's bond hearing was insufficient to establish he is a flight risk and thus could grant him release on bond, thereby mooting the constitutional and statutory challenges he raises here. Torres, 2018 WL 6649609, at *2 (citing Michalski v. Decker, 279 F. Supp.3d 487, 496 (S.D.N.Y. 2018) ("[E]even if the immigration judge denies bond, [the] petition could be mooted if the Board of Immigration Appeals reverses that determination."); Cepeda v. Shanahan, No. 15-CV-09446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) ("The BIA may find that the evidence proffered at [the petitioner's] bond hearing did not sufficiently establish his danger to the public, rendering [his] claim in this Court moot.")). An "administrative appeal, therefore, provides a 'genuine opportunity for adequate relief,'" Torres, 2018 WL 6649609, at *2

(quoting Beharry, 329 F.3d at 62 (citation omitted in original)), "that would render unnecessary 'a new [bond] hearing for [Petitioner] that meets the standards demanded in his petition[.]'" Id. (quotation to record omitted).

To the extent the petition can be read to suggest that he will suffer irreparable harm from his continued detention, thereby excusing him from exhaustion, there is "much authority" foreclosing this argument. Torres, 2018 WL 6649609, at *3 (citing Michalski, 279 F. Supp.3d at 496 (stating that habeas petitioner's "claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District"); Giwah v. McElroy, No. 97-CV-2524, 1997 WL 782078, at *4 (S.D.N.Y. Dec. 19, 1997) ("If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that the INS administrative remedies must be exhausted before resorting to the federal courts."); other citation omitted).

In sum, the Court finds that Ramraj has not established any of the exceptions to prudential exhaustion and that the purposes underlying the prudential exhaustion requirement would be disserved by entertaining the petition at this juncture. Therefore, the petition is dismissed without prejudice.

**V. Conclusion**

For the foregoing reasons, the petition is dismissed without prejudice due to Ramraj's failure to exhaust administrative remedies. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   January 29, 2020
         Rochester, New York.